UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY, Plaintiff, v. AECOM & WML VI, a Joint Venture, Defendant. | Case No.: 3:26-cv-3635-CAB-DDL **ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO COMPEL ARBITRATION** [Doc. No. 7] |

Argonaut Insurance Company ("Argonaut") sued AECOM & WML VI ("JV") seeking a declaration that Argonaut is not obligated to arbitrate and a preliminary and permanent injunction preventing enforcement of its joinder in the arbitration between JV and its subcontractor Golden State Boring & Pipe Jacking, Inc. ("Golden State"). Before the Court is JV's motion to dismiss, or alternatively, to compel arbitration. [Doc. No. 7.] The motion has been fully briefed, and the Court deems it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, the Court **DENIES** JV's motion to dismiss and **GRANTS** its motion to compel arbitration.

## I. BACKGROUND

JV entered into a contract with the East County Advanced Water Purification Joint Powers Authority for the design and construction of the East County Advanced Water Purification Project for the Ray Stoyer Water Recycling Facility in Santee, California. [Doc. No. 1 ("Complaint") at ¶ 23.] JV hired Golden State to perform the horizontal directional drilling ("HDD") work for the project, and JV and Golden State executed a contract ("Subcontract") for this drilling work. [*Id.* at ¶ 24.] Section 8 of the Subcontract required Golden State to obtain a performance bond from a surety guaranteeing that the surety would, in the case of Golden State's default, fulfill Golden State's contractual obligations through payment or performance. [*Id.* at ¶ 28; Doc. No. 1-3 at 5–6; Doc. No. 1-2.] Argonaut is the surety that issued the performance bond on behalf of Golden State for the benefit of JV. [Complaint at ¶ 2.] Argonaut and Golden State executed a contract "for the performance of the [Subcontract], which is incorporated herein by reference." [Doc. No. 1-2 at 4.]

A dispute arose between JV and Golden State regarding the site conditions Golden State encountered while performing its drilling work for the project. [Complaint at ¶ 37.] Golden State initiated arbitration against JV for this dispute. [Complaint at ¶ 48.] Section 17.3 of the Subcontract requires "[a]ny and all claims, controversies or disputes arising out of or relating to" the Subcontract to be first submitted to mediation. [Doc. No. 1-3 at 13.] "If any issues, claims or disputes remain unresolved after mediation concludes, the parties agree to submit remaining issues to binding arbitration in accordance with the rules and procedures then in effect and as solely determined by [JV] under either JAMS Arbitration Rules and Procedures or the AAA[.]" [*Id.*]

Relying on this arbitration clause in the Subcontract, JV sought to join Argonaut as a party to the AAA Arbitration to make a claim against Argonaut on its performance bond.

[Complaint at ¶ 49; Doc. No. 7-2 at 2.][1] Argonaut objected to the arbitrator's authority to determine whether Argonaut could be compelled to arbitrate, arguing that it did not agree to arbitrate disputes under the performance bond. [Doc. No. 7-2 at 3.] Instead, Argonaut argued, the performance bond contains language specifying that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located." [Doc. No. 1-2 at 5; *see* Doc. No. 7-2 at 4.]

The arbitrator ultimately issued an order joining Argonaut to the AAA Arbitration. [Complaint at ¶¶ 51–52; Doc. No. 7-2 at 2–4.] The arbitrator based his decision on Section 1 of the performance bond, which states that "[Golden State] and [Argonaut] . . . bind themselves . . . to [JV] for the performance of the [Subcontract], which is incorporated herein by reference." [Doc. No. 1-2 at 4.] The arbitrator found that this incorporation language bound Argonaut to the arbitration clause in the Subcontract. [Doc. No. 7-2 at 3–4 (relying on *Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal. App. 4th 1266 (1992)).]

Argonaut sued JV for declaratory and injunctive relief to, among other requests, prevent enforcement of the joinder order, arguing that the "threshold question of arbitrability [] must be decided by a court[.]" [Complaint at ¶¶ 1, 11.] JV filed the instant motion to dismiss, or alternatively, to compel arbitration. [Doc. No. 7.]

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is

---

[1] The Court takes judicial notice of the arbitrator's May 8, 2026 joinder order, [Doc. No. 7-2], as an adjudicative fact under Federal Rule of Evidence 201(b). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court shall issue an order compelling arbitration. *Id.* The FAA espouses a general federal policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts must give due regard to the federal policy favoring arbitration and any "ambiguities as to the scope of the arbitration clause . . . [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989).

In assessing a purported arbitration agreement, "the 'fundamental principle [is] that arbitration is a matter of contract[.]'" *AT&T Mobility*, 563 U.S. at 339 (quoting *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, courts must apply ordinary state law principles in determining an arbitration agreement's validity. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). As the Court has diversity jurisdiction over this case, it applies California law.

## III. DISCUSSION

### A. JV's Motion to Dismiss

#### 1. Judicial Estoppel Does Not Apply

JV argues that Argonaut should be judicially estopped from arguing against its joinder to the AAA Arbitration because this position is contrary to a legal argument it advanced in a recent case, *Swinerton Builders, Inc. v. Argonaut Ins. Co.*, No. 23-cv-04158-DMR, 2024 WL 1057473 (N.D. Cal. Mar. 11, 2024). [Doc. No. 7 at 2.] In *Swinerton*, Argonaut succeeded in its motion to compel arbitration by arguing that an "arbitration agreement in an incorporated bonded contract may be used to compel arbitration of disputes involving that incorporated bonded contract." *Swinerton*, 2024 WL 1057473, at *2. Here, Argonaut is arguing that it cannot be compelled to arbitrate in the AAA Arbitration based on an arbitration provision in the Subcontract between JV and Golden State, even though this subcontract has similarly been incorporated into the performance bond. [Complaint at ¶¶ 3–4.]

Judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 935 (9th Cir. 2011) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The doctrine is not limited to positions taken in the same action, but also bars litigants from making incompatible statements in two different cases. *See Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 605 (9th Cir. 1996). Judicial estoppel "applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." *Wagner v. Pro. Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004). However, judicial estoppel has most commonly been deployed to bar a party from making a later inconsistent factual assertion. *See Religious Tech. Ctr., Church of Scientology Int'l, Inc. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J., dissenting).

JV and Argonaut agree that there are three non-exhaustive factors that guide courts in the application of judicial estoppel. Courts consider: (1) whether the party's later

position is "clearly inconsistent" with its earlier position; (2) whether the party has successfully advanced the earlier position, such that judicial acceptance of an inconsistent position in the later proceeding would create a perception that either the first or the second court had been misled; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire*, 532 U.S. at 750–51.

There is no denying that *Swinerton* and this case are factually similar. Both involve a performance bond incorporating an underlying contract, an allegation of deficient performance against the subcontractor, and a request to compel the subcontractor's surety to arbitrate under the incorporated contract's arbitration provision. *See Swinerton*, 2024 WL 1057473, at *1–2. In *Swinerton*, Argonaut argued that although it was not a signatory to the underlying contract, it could invoke that contract's arbitration provision because the contract was incorporated into the performance bond. *Id.* at *3. Here, Argonaut appears to take the opposite position: Because it did not sign the underlying contract, it did not agree to arbitrate. [*See* Complaint at ¶ 63.]

Despite the factual similarity, however, Argonaut's positions are not "clearly inconsistent," and thus judicial estoppel is unwarranted. *See New Hampshire*, 532 U.S. at 750; *see also Navigators Specialty Ins. Co. v. Golden Bear Ins. Co.*, No. 21-cv-05176-EMC, 2024 WL 54694, at *12–13 (N.D. Cal. Jan. 4, 2024) (finding judicial estoppel does not apply because positions taken are not "clearly inconsistent" when the cases interpret different contracts). While Argonaut furnished the performance bond for these two construction projects, they are completely distinct projects with entirely different contracts. Notably, Argonaut's performance bond contract with Golden State has its own forum selection provision, whereas *Swinerton* makes no mention of a conflicting forum selection provision. Different legal arguments based on different facts are not necessarily "so inconsistent that they amount to an affront to the court that judicial estoppel may apply." *Samson*, 637 F.3d at 935 (citation modified). The Court declines to apply judicial estoppel

to bar Argonaut from arguing that it did not agree to arbitrate, and therefore JV's motion to dismiss is **DENIED** on that ground.

**2. Argonaut's Claim for Injunctive Relief**

JV also seeks dismissal of Argonaut's claim for injunctive relief on the ground that it is inappropriately pled as a standalone cause of action. [Doc. No. 7 at 8–9.] Because the Court grants JV's motion to compel arbitration and stays this action, *infra* Section III.B., it need not address JV's request to dismiss Argonaut's second cause of action on this ground.

**B. JV's Motion to Compel Arbitration**

In the alternative, JV asks the Court to compel Argonaut to participate in the pending AAA Arbitration. [Doc. No. 7 at 9.]

In deciding whether a dispute is subject to the arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; *Chiron*, 207 F.3d at 1130.

**1. There Is a Valid Agreement to Arbitrate Between JV and Argonaut**

First, it is settled that an agreement itself does not need to provide for arbitration. An agreement can incorporate by reference a secondary document that contains an arbitration clause. *See Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal. App. 4th 1266, 1271 (1992). *Boys Club* also concerns a performance bond issuer that, as a nonsignatory to the contract with the arbitration provision, resisted its joinder to an arbitration between the bond's principal and obligee. Boys Club hired a construction company to build its facility, and the company obtained a performance bond from a surety covering that work. *Id.* at 1270. After the facility was completed, Boys Club complained of defects, withheld its final payment, and filed a demand for arbitration against the construction company and the surety. The surety objected to its inclusion in the arbitration,

arguing in part that it had not agreed to arbitrate. It maintained that it was not a party to the contract between Boys Club and the construction company, which contained the arbitration agreement. *Id.* The California Court of Appeal disagreed. The Court of Appeal "conclude[d] that by virtue of the provision in its performance bond incorporating the contract, [the surety] agreed to be bound by the arbitration provisions of the contract." *Id.* at 1274.

As also partially quoted by the arbitrator in the AAA Arbitration joinder order against Argonaut,

> A contract performance bond will be read with the contract because when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond.

*Id.* at 1271–72 (citation modified). "Indeed, an abundance of case law provides that a surety may be bound by an arbitration clause in the underlying contract to which it is not a party where that contract is incorporated by reference in the Bond." *Allied World Ins. Co. v. New Paradigm Prop. Mgmt., LLC*, No. 2:16-CV-02992-MCE-GGH, 2017 WL 4310673, at *3 (E.D. Cal. Sep. 28, 2017); *see also Great Am. Ins. Co. v. Weitz Co., LLC*, No. 25-CV-02079-LJC, 2026 WL 346683, at *6 (N.D. Cal. Feb. 6, 2026).

Argonaut argues that *Boys Club* must be read in conjunction with *Remedial Constr. Services, LP v. AECOM, Inc.*, 65 Cal. App. 5th 658 (2021). [Doc. No. 9 at 26.] Relying on *Remedial*, Argonaut contends that "California courts will not infer an agreement to arbitrate from incorporated documents where the agreement actually executed by the resisting party contemplates litigation." [Doc. No. 9 at 7.]

In *Remedial*, a subcontractor sued the construction project's general contractor for damages related to alleged project mismanagement. The general contractor moved to compel arbitration under an arbitration clause in the master contract with the project owner, which the subcontract incorporated by reference. *Remedial*, 65 Cal. App. 5th at 661–62.

However, like Argonaut's performance bond, the subcontract had its own litigation forum selection provision. *Id.* at 664. Because of the conflicting clauses, the Court found no enforceable arbitration agreement between the general contractor and subcontractor. *Id.* at 666. Notably, *Remedial* involved a subcontractor and general contractor, not a contractor and the subcontractor's surety. The Court also emphasized that the master contract was a "voluminous" 151 pages and that the subcontract had a precedence clause giving it priority over the master contract in the event of a conflict or inconsistency. *Id.* at 661, 664. Here, neither the Subcontract between JV and Golden State nor Argonaut's performance bond contains such a clause, nor does the Subcontract approach 151 pages in length.

Further, the subcontract in *Remedial* used more mandatory language than the forum selection provision in Argonaut's performance bond. *Remedial*'s subcontract provision read: "Any litigation initiated by and between the Parties arising out of or relating to this Subcontract *shall* be conducted in the federal or state court[.]" *Id.* at 664 (citation modified). By contrast, Argonaut's parallel performance bond provision provides that "[a]ny proceeding, legal or equitable, under this Bond *may* be instituted in any court of competent jurisdiction[.]" [Doc. No. 1-2 at 5 (emphasis added).] The provision's separate requirement that any proceeding under the bond "*shall* be instituted within two years" also indicates that the parties understood the distinction between mandatory "shall" and permissive "may." [*See id.* (emphasis added).] Accordingly, this Court is reluctant to conclude that the performance bond's permissive litigation provision overrides the incorporated mandatory arbitration provision, particularly when the underlying dispute here is primarily between JV and Golden State. *See Remedial*, 65 Cal. App. 5th at 664–65.

Ultimately, because of material factual distinctions between this case and *Remedial*, the Court follows *Boys Club* and concludes that, by incorporating the Subcontract and its arbitration provision into the performance bond, Argonaut agreed to be bound by the arbitration provision, for at least some category of disputes as discussed in the next subsection.

### 2. The Arbitration Agreement Encompasses JV's Claims Against Argonaut in the AAA Arbitration

After determining that there is a valid agreement to arbitrate, the Court next decides whether the arbitration agreement encompasses the dispute at issue. *Chiron*, 207 F.3d at 1130. "Even though the performance bond and Subcontract are read together, as parts of substantially one transaction, reading the two documents together does not automatically impose all obligations in the contract" on Argonaut. *Weitz*, 2026 WL 346683, at *7 (citation modified); *see also Allied World*, 2017 WL 4310673, at *3.

Per the Subcontract's dispute resolution procedure, if "[a]ny and all claims, controversies or disputes arising out of or relating to this agreement" are unresolved after negotiations and mediation, "the parties agree to submit remaining issues to binding arbitration." [Doc. No. 1-3 at 13.]

Here, the "pending dispute between Golden State and [] JV arises from alleged differing site conditions Golden State contends it encountered while performing HDD work on the Project." [Complaint at ¶ 37.] This dispute is in stark contrast to the surety's claims against the owner for fraud in procuring the performance bond in *Allied World*, which the court held fell outside the scope of the incorporated contract's arbitration clause. 2017 WL 4310673, at *3–4. Instead, as in *Boys Club*, Golden State and JV are already engaged in arbitration before the AAA, and JV seeks to compel Argonaut, as Golden State's surety, to join that arbitration alongside Golden State to resolve JV's claims of deficient performance against Golden State. *See Allied World*, 2017 WL 4310673, at *4 (differentiating *Allied World* from *Boys Club*). The Court agrees with the reasoning in *Boys Club*: "Because of the nature of" Argonaut's "obligations under its performance bond," JV, Golden State, and Argonaut intended not only that Argonaut be bound by the result of arbitration between JV and Golden State, but also that Argonaut "would join in arbitration of disputes between" JV and Golden State "in view of the fact that such disputes necessarily affect its liability under the bond." *Boys Club*, 6 Cal. App. 4th at 1273.

Because the dispute concerns site conditions that allegedly disrupted Golden State's drilling work under the Subcontract, it arises out of or relates to the Subcontract. Therefore, the arbitration provision encompasses JV's claims against Argonaut in the AAA Arbitration.

## IV. CONCLUSION

For the foregoing reasons, JV's motion to dismiss is **DENIED** and its motion to compel arbitration is **GRANTED**. The Court **ORDERS** the parties to proceed in the AAA Arbitration. *See* 9 U.S.C. § 4.

In addition, the Court **STAYS** this action and directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. *See id.* § 3. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect."). The parties may reopen the case by filing a joint status report within 14 days of the completion of any arbitration.

It is **SO ORDERED**.

Dated: November 25, 2026

Hon. Cathy Ann Bencivengo
United States District Judge